IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGRID K. DELLATORRE, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| DELAWARE RIVER AND BAY | ) | |
| AUTHORITY, | ) | |
| a bi-state governmental agency of the | ) | |
| States of Delaware and New Jersey, | ) | |
| | ) | |
| Defendant. | ) | TRIAL BY JURY DEMANDED |

## COMPLAINT

1.     This is a civil action arising from discrimination because of sexual orientation and sex and retaliation which seeks compensatory and punitive damages and declaratory and injunctive relief for the constructive discharge of a homosexual, female Chef/Manager of the Cape May-Lewes Ferry who was harassed, suspended, and forced to resign her employment with Defendant because of her sexual orientation and her sex and in retaliation for her complaints of unlawful workplace discrimination based on her sexual orientation and her sex in violation of Title VII of the Civil Rights Act of 1964, and the Delaware Discrimination in Employment Act.

## I. JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 *U.S.C.* §§ 1331 and 1343;  42 *U.S.C.* § 1981a; and Title VII of the Civil Rights Act of 1964, as amended, 42 *U.S.C.* § 2000e et seq. ("Title VII").

3.     The causes of action arise under Title VII and the Delaware Discrimination in Employment Act ("DDEA").

4.      This Court has supplemental jurisdiction over the state law claims under the DDEA pursuant to 28 *U.S.C.* § 1367.

5.      All conditions precedent to jurisdiction have occurred or have been complied with.  Plaintiff filed a timely administrative complaint with the Delaware Department of Labor which was dually filed with the United States Equal Employment Opportunity Commission.  All administrative proceedings have been terminated.  Plaintiff received her Notices of Right to Sue from the Delaware Department of Labor on July 11, 2020, and from the U.S. Department of Justice on October 2, 2020.  She files this Complaint within 90 days of receipt of such Notices.

6.      Venue is proper in this district because it is the judicial district where Plaintiff was employed, the unlawful employment practices and the discrimination complained of occurred, and the claims arose.

## II.  **THE PARTIES**

7.      Plaintiff Ingrid K. Dellatorre is a homosexual female.  She is a resident of the State of Delaware.

8.      From May 2013 to March 11, 2019, Plaintiff was continuously employed by the Defendant Delaware River and Bay Authority in its Food and Retail Department as a Chef/Manager.  She worked primarily from Defendant's Lewes Ferry Terminal in Lewes, Delaware.

9.      At all times material hereto, Plaintiff was a diligent, honest, and loyal employee who always performed her job in an exemplary manner.

10.     Defendant Delaware River and Bay Authority ("DRBA") is a bi-state governmental agency of the U.S. states of Delaware and New Jersey.  It was established by

2

interstate compact in 1962.  Among other things, DRBA operates the Delaware Memorial twin

suspensions bridges; the Cape May-Lewes Ferry between Cape May, New Jersey and Lewes,

Delaware; the Wilmington Airport in New Castle County, Delaware; and the Civil Air Terminal

at Dover Air Force Base in Dover, Delaware.  Defendant is authorized to do business and is

doing business throughout the State of Delaware.  Defendant has a principal place of business

located at the Junction of Interstate 295 and Route 9, New Castle, Delaware 19720.

11.     At all times material hereto, Defendant had over 500 employees.  It is a covered

employer under both Title VII and the DDEA.

### III.  FACTS GIVING RISE TO THE ACTION

**A.     Plaintiff's Excellent Employment History.**

12.     Plaintiff had an excellent work history and performance record for Defendant.

There was a distinct lack of employee criticism of Plaintiff from 2013 through 2017.

13.     Plaintiff never was issued any written discipline for the first five (5) years of her

employment.

14.     For Defendant, Plaintiff earned two (2) awards including an Operational

Excellence Award in 2016, and an award for Food and Beverage Team Management for Group/

Team in October 2018.  For her good performance, Plaintiff also earned a substantial pay raise of

an entire pay grade level in or around January or February 2018.

**B.     Plaintiff's Supervisors.**

15.     Lewes Ferry Terminal Manager Yelena Kretova, a heterosexual female, became

Plaintiff's immediate supervisor in approximately early 2018.  Beginning in approximately

March 2018, and at all times material hereto, Kretova's immediate supervisor was Assistant

Food and Retail Superintendent Michelle Wright, a heterosexual female.

16.     At all times material hereto, Assistant Food and Retail Superintendent Michelle Wright, was Plaintiff's second level supervisor.

17.     Superintendent of Food and Beverage Shaun O'Brien, a heterosexual male, was Wright's immediate supervisor.  He was Plaintiff's third level supervisor.

18.     In her role, Wright oversaw 1) the Cape May Ferry Terminal, its Terminal Manager, and its Chef/Manager, 2) the Lewes Ferry Terminal, its Terminal Manager, and its Chef/Manager: Plaintiff, and 3) the vessels' Food & Beverage operations and the supervisors onboard those vessels.

**C.     Harassment Because of Sexual Orientation and Sex.**

19.     Among the approximately thirteen (13) full-time managers in Defendant's Food and Retail Department, Plaintiff was the only homosexual manager.  Plaintiff was Defendant's only female Chef/Manager.

20.     Assistant Food and Retail Superintendent Michelle Wright ("Wright") began harassing Plaintiff in June 2018.

21.     Specifically, Wright would follow Plaintiff with a clipboard, noting nearly every action Plaintiff took, but would not share her notes with Plaintiff.

22.     Wright would conduct walk-through inspections of Plaintiff's Lewes Terminal Kitchen and her outdoor kitchen for the On the Rock ("OTR") Restaurant Kitchen and write false criticisms of Plaintiff.  For example, she wrote that she observed a dirty area on the outside of a refrigerator.  Plaintiff or other staff members asked her to show them the dirty area, and Wright pointed to a spot of rust on the refrigerator door.

23.     Also, in the Summer of 2018, Defendant, Wright, and O'Brien had approximately four (4) additional cameras installed in the Lewes Terminal Kitchen where Plaintiff worked.

24.     Wright would sit at her desk and conduct surveillance of Plaintiff with her computer's access to at least eight (8) total security cameras in the Lewes Ferry Terminal.  Then, she would call Plaintiff and ask her why she took the prior action such as checking the daily temperatures of the refrigeration units.

25.     On a near daily basis, during the days that both Wright and Plaintiff worked at the Lewes Ferry Terminal (usually Tuesday through Friday), Wright would not speak to or communicate with Plaintiff except in a demeaning and accusatory manner, usually with false criticisms.

26.     Wright also oversaw the Cape May Ferry Terminal, its Terminal Manager Anthony Grassi, its Chef/Manager John Schlaner, and his successor: Chef/Manager George Galanti.

27.     At Cape May, cameras existed only in the Cape May Ferry Terminal and its outdoor kitchen during Plaintiff's employment for Defendant.

28.     Wright and O'Brien did not install cameras in the Cape May Terminal Kitchen or any additional cameras at the Cape May Ferry Terminal and its outdoor kitchen.

29.     Terminal Manager Anthony Grassi, Chef/Manager John Schlaner, and Chef/Manager George Galanti all are heterosexual males ("the three men").  In addition, Chef/Manager John Schlaner, and Chef/Manager George Galanti were Plaintiff's similarly situated peers.

30.     However, Wright did not conduct kitchen walk-through inspections of the

three men's work at the Cape May Ferry Terminal; did not conduct surveillance of the three men with her computer's access to the fewer security cameras in the Cape May Ferry Terminal and its outdoor kitchen; and would not falsely criticize, speak to, or communicate with the three men in the same demeaning and accusatory manner that she directed toward Plaintiff.

**D.     Plaintiff's Protected Activity.**

31.     On October 24, 2018, Plaintiff made an oral complaint to her immediate supervisor, Lewes Ferry Terminal Manager Yelena Kretova, of a hostile work environment because of her sexual orientation (homosexual) and sex (female) by her heterosexual manager, Assistant Food and Retail Superintendent, Michelle Wright.

32.     Kretova recorded the meeting with handwritten notes and told Plaintiff that she would escalate it to her supervisor, Wright, and/or Human Resources.  Upon information and belief, she escalated the complaint to Wright.

**E.     Retaliation.**

33.     Then, just two days later, on October 26, 2018, Wright issued Plaintiff a Performance Action Plan.

34.     At that same time, Wright also issued Plaintiff an Unpaid Suspension of ten (10) days, allegedly 1) because she failed to renew her ServSafe Certification which had expired and 2) for poor communication style and tone.

**F.     Evidence of Discrimination.**

**1.     Disparate Treatment.**

35.     In reality, Kretova was responsible for informing her indirect and direct subordinates including Plaintiff that their ServSafe Certifications had expired and needed to be

renewed.

36.     In addition, the ServSafe Certification had expired for Plaintiff's similarly situated, heterosexual co-workers, including supervisors Anthony Grassi, Yelena Kretova, and Michelle Wright.

37.     However, Defendant did not suspend or otherwise discipline Grassi, Kretova, or Wright.

**2.     False, Pretextual Criticism.**

38.     Regarding poor communication style and tone, O'Brien and Wright falsely stated that a heterosexual, outside, sales representative ("the sales representative") felt harassed and threatened by Plaintiff's communication style and left her feeling anxious and unwilling to service its contract with the DRBA.

39.     In reality, the sales representative never made a complaint against Plaintiff to Defendant.

40.     The sales representative informed Plaintiff that she did not feel harassed, threatened, or anxious and never made a complaint against Plaintiff to anyone.

**3.     Violation of Policy or Practice.**

41.     Absent major misconduct or major unsatisfactory job performance, Defendant's Progressive Discipline Policy requires that an Oral Reprimand precede a Written Reprimand; a Written Reprimand precede a Suspension; and a Suspension precede a Dismissal, a Transfer, or a Demotion.

42.     Prior to her Ten (10) Day Suspension, Plaintiff had not received a prior, Written Reprimand from Defendant.

43.     Wright skipped at least one step of Progressive Discipline in suspending Plaintiff without pay for ten (10) days.  This violated Defendant's Progressive Discipline Policy.

44.     Alternatively, this violated Defendant's practice of following the steps of Progressive Discipline before issuing a Suspension.

**G.     Constructive Discharge.**

**1.     Threat of Discharge.**

45.     In issuing the written Performance Action Plan and the written Memorandum of Suspension on October 26, 2018, Wright and O'Brien threatened to discharge Plaintiff for any further infractions or performance issues.

46.     Plaintiff served the Unpaid Suspension from Saturday, October 27, 2018, through Friday, November 9, 2018.  She returned to work on or about Saturday, November 10, 2018.

47.     After Plaintiff returned from the Unpaid Suspension, Wright continued and increased the harassing inspections, surveillance, and false criticisms of Plaintiff.

**2.     Alteration of Plaintiff's Job Responsibilities and Additional Disparate Treatment.**

**a.     Decreased Authority.**

48.     In or around November 2018, Wright removed from Plaintiff's authority, her heterosexual, male subordinate, Warehouse Supervisor Jay MacVeigh.  Wright made him report directly to her instead of Plaintiff.

49.     Previously, Plaintiff and others had disciplined MacVeigh for multiple performance issues for approximately two (2) years.

50.     However, Defendant and Wright never suspended this heterosexual male.

51.     Furthermore, Wright directed MacVeigh to spy on Plaintiff and report back to her

in exchange for his job security.

52.     As a result, through phone calls and e-mails, Wright was able to continue to issue false criticisms of Plaintiff for false infractions that allegedly occurred at times when Wright was not even on-site at the Lewes Ferry Terminal.

**b.     Increased Responsibility With Decreased Support.**

53.     For the Winter schedule from January 1, 2019 to late March or early April 2019, Wright and O'Brien further altered Plaintiff's jobs responsibilities by placing her in charge of Defendant's Lewes Warehouse on the two (2) busiest days of the week, Friday and Saturday, in addition to her existing roles as a Chef and a Manager.

54.     Also, Wright and O'Brien scheduled Plaintiff to work every Friday, Saturday, and Sunday.  All of her similarly situated, heterosexual, male peers had at least one of those three (3) weekend days off.

55.     In addition, Wright and O'Brien scheduled Plaintiff to be the only manager on duty in the Food and Retail Department at the Lewes Ferry Terminal and the Lewes Warehouse every Friday and Saturday.  Previously, there were a minimum of two (2) managers on duty for every weekend shift.

56.      Further, Wright and O'Brien changed Plaintiff's existing days off that she had for approximately five (5) years.  Wright and O'Brien did not change all existing days off for any of Plaintiff's similarly situated, heterosexual, male peers.

57.     Plaintiff took earned and accrued vacation leave from January 6th through January 22, 2019.  Plaintiff also took FMLA leave from February 8th through February 23rd, 2019, to care for her mother who was recovering from abdominal surgery.  Plaintiff then took earned and

accrued vacation leave from February 24, 2019, through March 7, 2019.

58.     Plaintiff returned to work on or about Friday, March 8, 2019, and worked on March 8th, 9th, and 10th, 2019.

59.     When Plaintiff returned to work, Defendant and Wright's harassment and false criticism of Plaintiff continued.  The false criticisms now included performance issues that allegedly happened on days when Plaintiff was not even scheduled or working.  For example, when Plaintiff on January 23, 2019, returned from vacation, Wright issued Plaintiff written discipline for food issues that occurred during Plaintiff's vacation and were the fault of others.

60.     On or about Monday, March 11, 2019, at approximately 9:30 a.m., Plaintiff met with Wright and Kretova in Plaintiff's office.  At that time, Plaintiff pointedly asked Wright what kind of schedule are the walk-through inspections on.  Wright indicated they are done "whenever I [Wright] feel like it."

61.     Plaintiff then asked who determines the dates of the walk-through inspections. Wright indicated she did.

62.     Plaintiff then asked why they were always done on days when Plaintiff is off. Wright did not answer her.

63.     Plaintiff then asked what are the dates of the Cape May walk-through inspections. Wright did not answer her.

64.     Plaintiff finally asked when the targeted harassment of Plaintiff was going to stop. Wright did not answer her.  She just smirked and folded her hands on her lap.

65.     Then, Plaintiff informed Wright she could not take Wright's discriminatory bullying and harassment any longer.  Plaintiff told Wright, "I'm out of here." Plaintiff left her

keys and badge on her desk, walked out the door, and quit.

**H.      Circumstantial Evidence of Retaliation and Discrimination.**

     **1.      Retaliation.**

          **a.      Temporal Proximity Between Complaint and Adverse Actions.**

66.      Defendant and Wright issued Plaintiff the Performance Action Plan and the Unpaid Suspension on October 26, 2018, just two (2) days after Plaintiff's complaint of discrimination by Wright.

67.      Plaintiff was constructively discharged on March 11, 2019, less than six (6) months after her October 24, 2018 complaint of discrimination by Wright.

     **2.      Sexual Orientation Discrimination.**

          **a.      Workplace Composition.**

68.      Defendant's workplace composition is evidence of sexual orientation discrimination and sex discrimination.

69.      Again, among the approximately thirteen (13) full-time managers in Defendant's Food and Retail Department, Plaintiff was the only homosexual manager.  Plaintiff was Defendant's only female Chef/Manager.

     **3.      Retaliation and Discrimination Because of Sexual Orientation and Sex.**

          **a.      Disparate Treatment.**

70.      On October 26, 2018, Defendant and Wright alleged that Plaintiff was being suspended for failure to renew her ServSafe Certification and poor communication style and tone.

71.      However, heterosexual, male co-workers, who did not report discrimination, but

failed to renew their ServeSafe Certifications were not disciplined by Wright or Defendant.

72.     Plaintiff suffered the adverse actions due to her sexual orientation, her sex, and in retaliation for her October 24, 2018 oral complaint of discrimination due to her sexual orientation and her sex by her heterosexual manager who favored Plaintiff's similarly situated, heterosexual male co-workers.

## IV.  INJURIES AND DAMAGES

73.     As a result of the discriminatory treatment she experienced, Plaintiff suffered numerous sleepless nights; gained weight; developed Rosaea, a stress-related skin condition that required her to seek medical treatment from a physician from 2017 to May 2018; and in March 2018, developed Polymyalgia Rheumatica, a stress-induced auto-immune disease characterized by inflammation of the arteries, pain, and fatigue.

74.     Plaintiff has been required to pay for medical visits and medications for which she otherwise would not have been required to pay.  The medication for Polymyalgia Rheumatica has compromised her immune system and required her to self-isolate and work only from home in a reduced capacity.

75.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered the decreased benefits of employment, lost wages, decreased employment and earnings opportunities, incidental damages for expenses incurred in seeking alternative employment; lost 401(a) plan and 457(b) plan benefits matching, lost medical, dental, and vision insurance, lost life insurance, and other lost benefits; medical expenses; humiliation, embarrassment, injury to reputation, emotional distress; and other pecuniary and non-pecuniary losses and permanent injuries.

## V.  OTHER ALLEGATIONS REGARDING DEFENDANT'S CONDUCT

76.      The actions of the Defendant were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federally protected rights.  Defendant either knew or showed a negligent or reckless disregard for the matter of whether its conduct violated federal and state law rights.  Its actions were outrageous and taken with evil or improper motive, in bad faith, out of personal animus, or motivated by bias and without any reasonable grounds to support them.  Its actions were wanton and malicious or taken with reckless indifference to rights protected under federal and state law.  Plaintiff's sexual orientation, sex, and/or protected activity made a difference in all actions adverse to her.  Plaintiff's sexual orientation, sex, and/or protected activity was a motivating or determinative factor in all actions adverse to her.

## VI.  CLAIMS

### COUNT I
### (TERMS AND CONDITIONS - TITLE VII AND DDEA - SEXUAL ORIENTATION)

77.      Plaintiff repeats and realleges all paragraphs set forth above.

78.      At all material times, Defendant was engaged in an industry affecting interstate commerce and had more than fifteen (15) employees for each working day in the applicable calendar year.

79.      Because of her sexual orientation (homosexual), Plaintiff suffered intentional discrimination which was severe or pervasive, regular, and continuous.  This detrimentally affected her, and it would do so for a reasonable person of the same sexual orientation in her position.

80.      The totality of the circumstances proves the existence of a hostile or abusive

13

working environment severe enough to affect the psychological stability of a homosexual worker.

81.     The acts identified herein were severe and pervasive, regular and continuous, and they created an intimidating, hostile, or offensive work environment.

82.     Under all the circumstances, Plaintiff has been illegally discriminated against in the terms and conditions of her employment, and otherwise harassed, by a discriminatory, hostile, and abusive work environment which was created, approved, and tolerated by management because of sexual orientation.

83.     Plaintiff's statutory right to be free of sexual orientation discrimination has been denied under Title VII and the DDEA.

### COUNT II
### (TERMS AND CONDITIONS - TITLE VII AND DDEA - SEX)

84.     Plaintiff repeats and realleges all paragraphs set forth above.

85.     Because of her sex, Plaintiff suffered intentional discrimination which was severe or pervasive, regular and continuous.  This detrimentally affected her, and it would do so for a reasonable person of the same sex in her position.

86.     The totality of the circumstances proves the existence of a hostile or abusive working environment severe enough to affect the psychological stability of a female worker.

87.     The acts identified herein were severe and pervasive, regular and continuous, and they created an intimidating, hostile, or offensive work environment.

88.     Under all the circumstances, Plaintiff has been illegally discriminated against in the terms and conditions of her employment, and otherwise harassed, by a discriminatory, hostile, and abusive work environment which was created, approved, and tolerated by management

14

because of sex.

89.     Plaintiff's statutory right to be free of sex discrimination has been denied under

Title VII and the DDEA.

## COUNT III
## DISCIPLINE IN RETALIATION FOR OPPOSING ILLEGAL PRACTICES
### (TITLE VII AND DDEA - SEXUAL ORIENTATION)

90.     Plaintiff repeats and realleges all paragraphs set forth above.

91.     Plaintiff opposed practices made illegal by Title VII and the DDEA.  Defendant

retaliated against her for her opposition and disciplined her.  There is a causal connection

between Plaintiff's opposition and Defendant's retaliation.

92.     Any stated legitimate non-retaliatory reason offered by the Defendant for its

actions is a pretext for retaliation for opposing discrimination based on sexual orientation.  Any

reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered

legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and

hence infer that Defendant did not act for the asserted non-discriminatory reasons.

93.     Alternatively, Plaintiff can demonstrate pretext because the natural probative

force of all direct and circumstantial evidence establishes that it is more likely than not that a

motivating or determinative cause of the adverse employment action was Plaintiff's protected

activity.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff

are pretextual and a cover up for retaliation and sexual orientation discrimination.

94.     Plaintiff's rights were violated under Title VII and the DDEA, because she was

disciplined or otherwise discriminated against in retaliation for opposing illegal practices and on

15

the basis of her sexual orientation.

95.     Plaintiff's statutory right to be free of retaliation for opposing sexual orientation discrimination has been denied under Title VII and the DDEA.

**COUNT IV**
**DISCIPLINE IN RETALIATION FOR OPPOSING ILLEGAL PRACTICES**
**(TITLE VII AND DDEA - SEX)**

96.     Plaintiff repeats and realleges all paragraphs set forth above.

97.     Plaintiff opposed practices made illegal by Title VII and the DDEA.  Defendant retaliated against her for her opposition and disciplined her.  There is a causal connection between Plaintiff's opposition and Defendant's retaliation.

98.     Any stated legitimate non-retaliatory reason offered by the Defendant for its actions is a pretext for retaliation for opposing discrimination based on sex.  Any reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reason.

99.     Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's protected activity.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for retaliation and sex discrimination.

100.     Plaintiff's rights were violated because she was disciplined or otherwise discriminated against in retaliation for opposing illegal practices and on the basis of her sex.

101.    Plaintiff's statutory right to be free of retaliation for opposing sex discrimination has been denied under Title VII and the DDEA.

## COUNT V
### (DISCIPLINE - TITLE VII AND DDEA - SEXUAL ORIENTATION)

102.    Plaintiff repeats and realleges all paragraphs set forth above.

103.    Plaintiff is a homosexual female.  Defendant discriminated against and disciplined her.  There is a causal connection between Plaintiff's sexual orientation and Defendant's discrimination.  Any non-discriminatory reason given by Defendant is a pretext for sexual orientation discrimination.

104.    Any stated legitimate non-discriminatory reason offered by the Defendant for its actions is a pretext for intentional discrimination based on sexual orientation.  Any reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reason.

105.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's sexual orientation.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for sexual orientation discrimination.

106.    Plaintiff's rights were violated, because she was disciplined or otherwise discriminated against the basis of her sexual orientation.

107.    Plaintiff's statutory right to be free of retaliation for opposing sexual orientation discrimination has been denied under Title VII and the DDEA.

**COUNT VI**
**(DISCIPLINE - TITLE VII AND DDEA - SEX)**

108.    Plaintiff repeats and realleges all paragraphs set forth above.

109.    Plaintiff is a female.  Defendant discriminated against and disciplined her.  There is a causal connection between Plaintiff's sex and Defendant's discrimination.  Any non-discriminatory reason given by Defendant is a pretext for sex discrimination.

110.    Any stated legitimate non-discriminatory reason offered by the Defendant for its actions is a pretext for intentional discrimination based on sex.  Any reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reason.

111.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's sex.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for sex discrimination.

112.    Plaintiff's rights were violated under Title VII and the DDEA, because she was disciplined or otherwise discriminated against the basis of her sex.

113.    Plaintiff's statutory right to be free of retaliation for opposing sex discrimination

has been denied under Title VII and the DDEA.

**COUNT VII**
**CONSTRUCTIVE DISCHARGE IN RETALIATION FOR**
**OPPOSING ILLEGAL PRACTICES**
**(TITLE VII AND DDEA - SEXUAL ORIENTATION)**

114.    Plaintiff repeats and realleges all paragraphs set forth above.

115.    On October 26, 2018, Defendant and Wright threatened to discharge Plaintiff in

the Performance Action Plan and in the written memorandum issuing the Ten (10) Day

Suspension.

116.    Defendant and Wright altered Plaintiff's job responsibilities by removing

Jay MacVeigh from her command; by placing her in charge of  Defendant's Lewes Warehouse

on the two (2) busiest days of the week, Friday and Saturday, in addition to her existing roles as a

Chef and a Manager; and by scheduling her to work every Friday and Saturday as the only

manager on duty in the Food and Retail Department at the Lewes Ferry Terminal and the Lewes

Warehouse.

117.    Before, after, and in the Performance Action Plan, Defendant and Wright issued

Plaintiff unsatisfactory job evaluations.

118.    After Wright's harassing inspections and surveillance, Defendant and Wright

falsely accused Plaintiff of misconduct.

119.    Defendant knowingly permitted conditions of employment which were so

intolerable that a reasonable person subject to them would be forced to quit.  Plaintiff was forced

to quit, and she in effect has resigned.  The sole reason these conditions were permitted was

Plaintiff's complaint of discrimination because of sexual orientation.

19

120.     As a direct and proximate result of all these incidents in the workplace, Plaintiff was constructively discharged.  She has suffered severe emotional distress marked by numerous sleepless nights; weight gain; a stress-related skin condition: Rosaea; and a stress-induced auto-immune disease: Polymyalgia Rheumatica ("PMR").

121.     Plaintiff's statutory right to be free of retaliation for her complaints of discrimination because of sexual orientation has been denied under Title VII and the DDEA.

**COUNT VIII**
**CONSTRUCTIVE DISCHARGE IN RETALIATION FOR**
**OPPOSING ILLEGAL PRACTICES**
**(TITLE VII AND DDEA - SEX)**

122.     Plaintiff repeats and realleges all paragraphs set forth above.

123.     On October 26, 2018, Defendant and Wright threatened to discharge Plaintiff in the Performance Action Plan and in the written memorandum issuing the Ten (10) Day Suspension.

124.     Defendant and Wright altered Plaintiff's job responsibilities by removing Jay MacVeigh from her command; by placing her in charge of  Defendant's Lewes Warehouse on the two (2) busiest days of the week, Friday and Saturday, in addition to her existing roles as a Chef and a Manager; and by scheduling her to work every Friday and Saturday as the only manager on duty in the Food and Retail Department at the Lewes Ferry Terminal and the Lewes Warehouse.

125.     Before, after, and in, and after the Performance Action Plan, Defendant and Wright issued Plaintiff unsatisfactory job evaluations.

126.     After Wright's harassing inspections and surveillance, Defendant and Wright falsely accused Plaintiff of misconduct.

127.    Defendant knowingly permitted conditions of employment which were so intolerable that a reasonable person subject to them would be forced to quit.  Plaintiff was forced to quit, and she in effect has resigned.  The sole reason these conditions were permitted was Plaintiff's sex.

128.    As a direct and proximate result of all these incidents in the workplace, Plaintiff was constructively discharged.  She has suffered severe emotional distress marked by numerous sleepless nights; weight gain; a stress-related skin condition: Rosaea; and a stress-induced auto-immune disease: PMR.

129.    Plaintiff's statutory right to be free of retaliation for her complaints of discrimination because of sex has been denied under Title VII and the DDEA.

**COUNT IX**
**CONSTRUCTIVE DISCHARGE**
**(TITLE VII AND DDEA - SEXUAL ORIENTATION)**

130.    Plaintiff repeats and realleges all paragraphs set forth above.

131.    On October 26, 2018, Defendant and Wright threatened to discharge Plaintiff in the Performance Action Plan and in the written memorandum issuing the Ten (10) Day Suspension.

132.    Defendant and Wright altered Plaintiff's job responsibilities by removing Jay MacVeigh from her command.

133.    Before, after, and in, and after the Performance Action Plan, Defendant and Wright issued Plaintiff unsatisfactory job evaluations.

134.    After Wright's harassing inspections and surveillance, Defendant and Wright falsely accused Plaintiff of misconduct.

21

135.    Defendant knowingly permitted conditions of employment which were so intolerable that a reasonable person subject to them would be forced to quit.  Plaintiff was forced to quit, and she in effect has resigned.  The sole reason these conditions were permitted was Plaintiff's sexual orientation.

136.    As a direct and proximate result of all these incidents in the workplace, Plaintiff was constructively discharged.  She has suffered severe emotional distress marked by numerous sleepless nights; weight gain; a stress-related skin condition: Rosaea; and a stress-induced auto-immune disease: PMR.

137.    Plaintiff's statutory right to be free of discrimination because of sexual orientation has been denied under Title VII and the DDEA.

**COUNT X**
**CONSTRUCTIVE DISCHARGE**
**(TITLE VII AND DDEA - SEX)**

138.    Plaintiff repeats and realleges all paragraphs set forth above.

139.    On October 26, 2018, Defendant and Wright threatened to discharge Plaintiff in the Performance Action Plan and in the written memorandum issuing the Ten (10) Day Suspension.

140.    Defendant and Wright altered Plaintiff's job responsibilities by removing MacVeigh from her command, by placing her in charge of  Defendant's Lewes Warehouse on the two (2) busiest days of the week, Friday and Saturday, in addition to her existing roles as a Chef and a Manager, and by scheduling her to work every Friday and Saturday as the only manager on duty in the Food and Retail Department at the Lewes Ferry Terminal and the Lewes Warehouse.

141.    Before, after, and in, and after the Performance Action Plan, Defendant and

Wright issued Plaintiff unsatisfactory job evaluations.

142.    After Wright's harassing inspections and surveillance, Defendant and Wright falsely accused Plaintiff of misconduct.

143.    Defendant knowingly permitted conditions of employment which were so intolerable that a reasonable person subject to them would be forced to quit.  Plaintiff was forced to quit, and she in effect has resigned.  The sole reason these conditions were permitted was Plaintiff's sex.

144.    As a direct and proximate result of all these incidents in the workplace, Plaintiff was constructively discharged.  She has suffered severe emotional distress marked by numerous sleepless nights; weight gain; a stress-related skin condition: Rosaea; and a stress-induced auto-immune disease: PMR.

145.    Plaintiff's statutory right to be free of discrimination because of sex has been denied under Title VII and the DDEA.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

A.    Enter a declaratory judgment declaring the actions of Defendant to be violations of federal and state law;

B.    Issue a permanent injunction requiring Defendant to expunge Plaintiff's personnel files of any derogatory, false, or misleading information relating to this matter;

C.    Award damages in an amount to be determined at trial for lost salary, back pay and front pay, including all incremental pay increases that Plaintiff would have received;

D.    Award damages for lost 401(a) plan and 457(b) plan benefits matching;

E.    Award damages for the cost of replacement medical, dental, and vision insurance

through COBRA;

     F.     Award damages for lost life insurance and other lost benefits;

     G.     Award incidental damages for expenses incurred in seeking alternative

employment;

     H.     Award compensatory damages for medical expenses, emotional distress,

humiliation, embarrassment, and injury to reputation;

     I.     Award punitive damages under Title VII and the DDEA;

     J.     Award reasonable attorney's fees, costs, and pre-judgment and post-judgment

interest against Defendant; and

     K.     Require such other and further relief as is equitable, just, and proper.

**LaROSA & ASSOCIATES LLC**

*/s/ John M. LaRosa*
**JOHN M. LaROSA, ESQ.**
Delaware Bar No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290 (telephone)
(302) 655-9329 (fax)
JLR@LaRosaLaw.com

*Attorney for Plaintiff Ingrid K. Dellatorre*

Dated: October 7, 2020

Attorney Files/John's Files/Client Files/DELLATORRE/D.Del./Complaint